**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTIN HAUSER, KIMBERLY LIND and** | ) | |
| **APRIL WESTBERG, on behalf of themselves,** | ) | |
| **individually, and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| | ) | **Case No. 1:15-cv-6462** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Honorable Judge Harry D.** |
| | ) | **Leinenweber** |
| **ALEXIAN BROTHERS MEDICAL CENTER,** | ) | |
| **d/b/a ALEXIAN BROTHERS HOME** | ) | **Magistrate Judge Michael T. Mason** |
| **HEALTH, a Texas Non-profit Corporation,** | ) | |
| **ALEXIAN BROTHERS HEALTH SYSTEM, an** | ) | |
| **Illinois Non-profit Corporation, and** | ) | |
| **ASCENSION HEALTH, a Missouri Non-profit** | ) | |
| **Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

| **ATTORNEYS FOR PLAINTIFFS:** | **ATTORNEYS FOR DEFENDANTS:** |
|---|---|
| James B. Zouras | Jane M. McFetridge |
| Ryan F. Stephan | Jeffrey L. Rudd |
| Teresa M. Becvar | Jody Kahn Mason |
| Haley R. Jenkins | JACKSON LEWIS, P.C. |
| STEPHAN ZOURAS, LLP | 150 North Michigan Avenue |
| 205 North Michigan Avenue | Suite 2500 |
| Suite 2560 | Chicago, Illinois 60601 |
| Chicago, Illinois 60601 | (312) 787-4949 |
| 312.233.1550 | (312) 787-4995 (fax) |
| 312.233.1560 (fax) | |
| lawyers@stephanzouras.com | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

I. FACTUAL AND PROCEDURAL BACKGROUND..........................................2

II. SUMMARY OF THE SETTLEMENT TERMS .................................................4

    A. The Settlement Fund ...............................................................................4

    B. Eligible Class Members ..........................................................................5

    C. Releases...................................................................................................5

    D. Allocation Formula .................................................................................5

    E. Service Payments, Attorneys' Fees, and Litigation Costs .....................6

    F. Settlement Administration ......................................................................6

    G. Objections and Opt-Outs........................................................................7

III. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 .......................................................................................................7

IV. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS ...............................................................................................................8

    A. The Settlement Is Fair, Reasonable, and Adequate ...............................8

        1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor)..................9

        2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor)......................................................................13

        3. The Reaction of the Class Has Been Positive (Third Factor). ...................14

        4. Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor). .........................................................................14

        5. Discovery Has Advanced Far Enough to Allow the Parties to

i

                  Resolve the Case Responsibly (Fifth Factor)............................................15

    B.    Approval of The Release of The Class Federal and State Wage and
          Hour Claims Is Appropriate...................................................................15

CONCLUSION..................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................................................... 8, 9

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ...... 11, 14

*Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ............................................................................................................................ 15, 16

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985)................................. 13

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ...................................... 9, 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)....................................................... 7

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002) .................................. 12

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)....................................................... 9

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)........................................................... 8

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ....................................................... 14

*Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................................................................... 14

*In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) ................................................................................. 12

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................. 13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................... passim

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) .................................................... 14

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004)................................................ 9

*O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047 (N.D. Ill. 2002) ........................ 15

iii

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 10

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ....................................................................... 8

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) .................................................................. 14

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ............................................... 13

*Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310 (N.D. Ga. 2013) .................... 11

*Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337 (N.D. Tex. 1976) .............................. 14

*Seiden v. Nicholson*, 72 F.R.D. 201 (N.D. Ill. 1976) ................................................................... 13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ........................... 9

*Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010) .................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ......................................... 8

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ................................... 12

*Williams v. Quinn*, 748 F. Supp. 2d 892 (N.D. Ill. 2010) ............................................................ 11

## Rules

Rule 23(c) ........................................................................................................................................ 7

Rule 23(e) ........................................................................................................................................ 8

## Other Authorities

Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ...................... 8, 16

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996) ........................... 16

*Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ... 16

## INTRODUCTION

Plaintiffs Kristin Hauser, Kimberly Lind, and April Westberg ("Named Plaintiffs"), individually and on behalf of a class of individuals certified for settlement purposes (collectively, "Plaintiffs"), and Defendants Alexian Brothers Medical Center, a/k/a Alexian Brothers Home Health, Alexian Brothers Health System, and Ascension Health (collectively, "Alexian Brothers" or "Defendants") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, move for final approval of the Parties' settlement of Plaintiffs' claims of misclassification and unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* The Parties' settlement of this hybrid FLSA collective action and IMWL Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached hereto as Exhibit A, including the releases of claims as set forth in the Settlement Agreement; and (2) enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

On December 13, 2016, the Court took the first step in the settlement approval process by preliminarily approving the Parties' Class and Collective Action Settlement; certifying the Settlement Class pursuant to Fed. R. Civ. P. 23 ("Rule 23"); appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing Named Plaintiffs Kristin Hauser, Kimberly Lind, and April Westberg as Class Representatives; appointing Kurtzman Carson Consultants ("KCC" or "Settlement Administrator") as Settlement Administrator; directing that notice be mailed to the Class Members; and setting a date for the Final Approval Hearing. (D.E. 90).

Class Members have been notified of the terms of the settlement, including the monetary

relief, the allocation formula, their right to object to or opt out of the settlement. Exhibit C (Declaration of Andy Morrison ("Morrison Decl.")) ¶¶ 6-7; *see also* Morrison Decl. Ex. A (Notice Materials). No Class Members objected to the settlement, and only two opted out of the settlement. Morrison Decl. ¶ 9; Exhibit D (Declaration of Jim Zouras ("Zouras Decl.")) ¶ 8. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement ("Preliminary Approval Motion") (D.E. 86), Named Plaintiffs Kristin Hauser, Kimberly Lind, and April Westberg filed the above-captioned class and collective action on July 24, 2015, alleging that they and other registered nurses, physical therapists, and occupational therapists (collectively, "Clinicians") who performed clinical visits to patients' homes were misclassified by Alexian Brothers as exempt from the overtime requirements of the FLSA and IMWL and wrongfully deprived of overtime compensation.[1] (D.E. 1).

Plaintiffs sought to represent themselves and similarly situated Clinicians as a collective action under the FLSA and a class action under the IMWL and Rule 23. On or about January 6, 2016, the Court granted Plaintiff's motion for conditional certification under the FLSA. (D.E. 18, 53). Thereafter, 11 individuals timely filed opt-in consent forms to join the FLSA collective action ("Opt-In Plaintiffs").

The Parties conducted extensive discovery including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories; (c) the exchange of thousands of pages

---

[1]      On November 20, 2015, Plaintiffs filed an Amended Complaint for the purpose of pleading additional facts regarding Ascension Health's status as Plaintiffs' employer. (D.E. 42).

of written discovery, including voluminous production of electronically stored information ("ESI") in the form of over 250,000 lines of data from the Allscripts patient billing and recordkeeping software, in addition to supplemental data produced immediately before the filing of the Preliminary Approval Motion; (d) the deposition of each Named Plaintiff; (e) data analysis by Plaintiffs' and Defendants' undisclosed experts; (f) the review of Defendants' written policies and procedures; (g) the deposition of Defendants' corporate representative; (h) review of voluminous payroll records identifying dates of employment and pay rates; and (i) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Zouras Decl. ¶ 6. All discovery was conducted in conjunction with a comprehensive investigation by counsel on the applicable law as applied to the facts discovered regarding the alleged claims and defenses.

On August 31, 2016, the Parties participated in an all-day mediation session overseen by an experienced private mediator, the Honorable Stuart Nudelman (Ret.). Zouras Decl. ¶ 7. A further session took place one week later, on September 7, 2016. *Id*. As a result, the Parties reached an agreement on the settlement amount. *Id*. Over the next three weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in a Memorandum of Understanding and ultimately, in the formal Settlement Agreement executed in full on December 6, 2016. *Id.* This settlement includes 86 Class Members, inclusive of the Named Plaintiffs and the 11 Opt-In Plaintiffs. *Id.* ¶ 8. The Class is defined as all individuals "employed by Alexian Brothers Medical Center as Home Health Clinicians in Illinois during the period July 24, 2012 through the date of entry of the Preliminary Approval Order, who were paid on a per visit basis and who were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks … ." Settlement Agreement ¶ 4. Those employees are specifically identified

3

by name in the Agreement. *Id*. at Exhibit A.

On December 7, 2016, the Parties filed the Preliminary Approval Motion requesting, among other relief, that the Court grant preliminary approval of the Settlement Agreement and certify a Rule 23 class for settlement purposes. (D.E. 86). On December 13, 2016, the Court granted preliminary approval of the Parties' proposed settlement; certified the class; appointed Stephan Zouras, LLP as Class Counsel; appointed the Named Plaintiffs as Class Representatives; directed that notice be mailed; and set a date for a final approval hearing ("Preliminary Approval Order"). (D.E. 90).

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of the settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiffs and Defendants. Zouras Decl. ¶ 13.

### A.     The Settlement Fund

The Settlement Agreement provides that Defendants will pay the Gross Settlement Amount of One Million Dollars ($1,000,000.00) as consideration for Class Members' promises and releases in the Settlement Agreement. Settlement Agreement ¶ 25. The Gross Settlement Amount shall fully resolve and satisfy: (1) all attorneys' fees and costs approved by the Court in connection with Class Counsel's representation of Named Plaintiffs, Opt-In Plaintiffs and Class Members; (2) all settlement claims administration fees and costs; (3) all amounts to be paid to the Named Plaintiffs, Opt-In Plaintiffs, and Class Members; and (4) all Court-approved service payments to the Named Plaintiffs. *Id.* The Gross Settlement Amount is non-reversionary. Unclaimed amounts from the settlement will be donated to the Alexian Brothers Health System d/b/a Alexian Brothers Foundation, an independent non-profit, under the *cy pres* doctrine. *Id.* at ¶ 30(f).

4

### B. Eligible Class Members

No action was required by Class Members to receive a settlement payment. Settlement Agreement ¶ 42. All individuals employed by Alexian Brothers Medical Center as Home Health Clinicians in Illinois during the period July 24, 2012 through December 13, 2016 who did not opt out of the settlement will receive a payment. *Id.* ¶¶ 4, 42.

### C. <u>Releases</u>

The Settlement Agreement provides that Class Members who have not opted out or objected to the settlement will release both their federal and state wage and hour claims. Settlement Agreement ¶ 28. Class Members who opted out are not bound by the settlement. *Id.* at ¶ 42.

### D. <u>Allocation Formula</u>

The computation of the payments to Class Members is based on employee time record and mileage data from the Allscripts software and supplied by Alexian Brothers. The settlement funds are allocated to each Class Member based on the time spent in visits recorded in Allscripts, plus the estimated time spent on travel, plus the estimated time spent on non-visit related work during each workweek. Settlement Agreement ¶ 30(c). The allocation method provides compensation for a total of 11,403 workweeks for 86 Class Members during a class period spanning over four years and results in an average settlement payment of nearly $7,000.00 per Class Member, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and service payments. Zouras Decl. ¶ 10. Class Members whose data show no workweeks with estimated hours more than forty during the class period were offered a minimum award of $250.00. Settlement Agreement ¶ 30(c). In addition, the Named Plaintiffs

and the 11 Opt-In Plaintiffs will receive liquidated damages under the FLSA. *Id.*

### E.   Service Payments, Attorneys' Fees, and Litigation Costs

Contemporaneous with this Motion, Plaintiffs will apply for Court approval, and Defendants will not oppose, distribution of Service Payments to the Named Plaintiffs, paid out of the Gross Settlement Amount, of Fifteen Thousand Dollars ($15,000.00) to each Named Plaintiff. Settlement Agreement ¶ 30(b). In addition, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees of thirty-three and one third percent (33 ⅓%) of the Gross Settlement Amount, or Three Hundred Thirty-Three Thousand, Three Hundred and Thirty-Three and 33/100 Dollars ($333,333.33), and an additional amount as reimbursement for their actual litigation costs and settlement administration expenses of Twenty-Three Thousand Five Hundred Dollars ($23,500.00). Settlement Agreement ¶¶ 30(a), 31. The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F.   Settlement Administration

The Parties selected KCC, an experienced class action claims administrator, to administer the settlement. Settlement Agreement ¶ 23. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid from the Gross Settlement Amount. *Id.* at ¶ 30(a).

On December 22, 2016, the Settlement Administrator mailed the Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice") and Opt-Out Form (collectively "Notice Materials") to 88 Class Members. Morrison Decl. ¶ 6. After the Notice

Materials were mailed, the Settlement Administrator received two Notice Materials returned by USPS with undeliverable addresses. *Id.* ¶ 7. Through credit bureau and/or other public source databases, the Settlement Administrator performed address searches for the undeliverable Notice Materials and was able to find an updated address for one of the Class Members. *Id.* The Settlement Administrator promptly re-mailed the Notice Materials to the new address, which was subsequently returned as undeliverable, and no further action was taken. *Id.*

In addition, appropriate notice was provided to the requisite federal and state officials in the states in which a member of the Class resides in compliance with the Class Action Fairness Act of 2005. *Id.* ¶¶ 2-3. None of these federal or state officials filed an objection to the Settlement. *Id.* ¶ 4.

> ### G. Objections and Opt-Outs

The deadline to object or opt out of the settlement was February 21, 2017. This deadline has now passed. Two Class Members requested exclusion from the settlement, and no Class Member objected to the settlement. Morrison Decl. ¶¶ 8-9. The remaining 86 Class Members are participating Class Members, representing 97.7% of the total Class.

## III. THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. As set forth in Section II.E above, the Parties' and the Settlement

Administrator's efforts to effectuate notice by mail to the Class Members meet the requirements of Rule 23(c)(2)(B).

## IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the

provisions of the FLSA and IMWL and thus should be approved.

**A.      The Settlement Is Fair, Reasonable, and Adequate**

To approve a proposed settlement of a class action under Rule 23, a district court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). All of these factors weigh in favor of final approval.

**1.      The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).**

Alexian Brothers has agreed to settle this case for a Gross Settlement Amount of One Million Dollars ($1,000,000.00). Settlement Agreement ¶ 25. The Gross Settlement Amount shall fully resolve and satisfy: (1) all attorneys' fees and costs approved by the Court in connection with Class Counsel's representation of Named Plaintiffs and members of the

collective and class actions; (2) all settlement claims administration fees and costs; (3) all amounts to be paid to the Class Members; and (4) any Court-approved service payments to the Named Plaintiffs. *Id.* The Gross Settlement Amount is non-reversionary. Unclaimed amounts from the settlement will be donated to the Alexian Brothers Health System d/b/a Alexian Brothers Foundation, an independent non-profit, under the *cy pres* doctrine. *Id.* at ¶ 30(f).[2] This is a substantial settlement that represents a significant value – after paying attorneys' fees, litigation costs, settlement administration expenses, and service payments, $597,376.94 will be distributed to the Named Plaintiffs, Opt-In Plaintiffs, and Class Members, which averages to an award of nearly $7,000.00 per participating Class Member – particularly given the attendant risks of litigating the merits of the case, even though recovery might be greater if Plaintiffs attained class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, survived any appeal, and were able to collect. Zouras Decl. ¶ 10.

This settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Based on their investigation, including Named Plaintiffs' testimony and other evidence that Class Members routinely worked in excess of 40 hours during their regular work week, Class Counsel estimate that the settlement amount represents approximately 75% of the Class's likely maximum potential claim for lost wages.

---

[2]    In accordance with this provision, $789.73 has been designated to be donated to the *cy pres*, the Alexian Brothers Foundation. Zouras Decl. ¶ 9. In addition, if any Class Member's settlement check is not cashed within 180 days, any unclaimed amounts shall be remitted to the *cy pres* as well. Settlement Agreement ¶ 30(f).

Zouras Decl. ¶ 11.[3] Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200; *see also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants' pay scheme, which Class Counsel contends

---

[3]     In contrast, Defendants assert that the Settlement actually represents 100% of any damages attainable at trial, which further supports the adequacy and reasonableness of the Settlement. The difference in opinion between the Parties arises from Defendants' argument that Class Members spent substantially less time than Plaintiffs alleged they spent performing required tasks outside of patient visits, such as completing documentation, preparing for visits, communicating with patients, physicians and other medical care providers, coordinating care with other disciplines, and ordering equipment and supplies.

compensates Clinicians on a combined "per visit" and hourly basis, fails to meet the salary or fee basis tests under the FLSA. Few courts have addressed this precise issue, and the ones that have are non-precedential in this district. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether the Named Plaintiffs and the Class Members could credibly establish the hours of overtime they worked and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome Defendants' arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results in an overtime multiplier of 0.5 times the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims).

12

The proposed settlement thus ensures that the Class Members who submitted claims will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. In light of the substantial recovery this settlement provides, and the attendant risks of litigation, this factor therefore weighs in favor of final approval.

### 2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money for the class; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in fully briefed motions for

13

summary judgment on liability and, if those motions were to be denied, the risk, time, and expense associated with a complex trial or trials. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). Here, only two Class Members have requested exclusion from the settlement. No Class Members objected to the settlement. Thus, this factor also favors approval of the settlement.

### 4. Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, although they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. Class Counsel are competent and

experienced in class actions, particularly wage and hour class actions of this kind, and are intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Zouras Decl. ¶¶ 4-5. Class Counsel also are realistic and understand that the resolution of Rule 23 class certification and liability issues, the outcome of the trial, the inevitable appeals process, and the ultimate collection risk are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Defendants' counsel also endorse this settlement. This factor therefore weighs in favor of final approval.

     **5.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This complex hybrid class and collective action was resolved approximately 15 months after it was initiated. This period involved extensive discovery, including research, analysis, investigation, the exchange of thousands of pages of written discovery, including voluminous production of ESI in the form of over 250,000 lines of Allscripts data, several depositions, consultations with experts, and FLSA conditional certification practice, among other things. *See* Zouras Decl. ¶ 6. The stage of litigation has advanced to a state that the Parties could fairly and fully evaluate the value of the Settlement – indeed, class-wide merits discovery, Rule 23 class certification and dispositive motion practice, and trial preparation were the immediate tasks at hand. *Id* at ¶ 12. Given the significant amount of time and resources spent by the Parties in discovery and advancing the lawsuit, this factor favors final approval.

    **B.    Approval of the Release of Class Federal and State Wage and Hour Claims Is Appropriate.**

The Parties also request that the Court specifically approve the release of Class Members' federal and state wage and hour claims, as defined in the Settlement Agreement, Settlement Agreement ¶ 28. "A court's review of FLSA settlements requires a similar assessment [to Rule

15

23]. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at \*9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Similarly, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under that law. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the U.S. Department of Labor). When supervising a wage and hour settlement, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed. *Butler*, 2011 WL 4729789 at \*9.

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, the Honorable Judge Stuart Nudelman (Ret.), followed by several weeks of subsequent negotiation. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis, and motion practice.

Because the Settlement Agreement, including Class Members' releases of their federal and state wage and hour claims, resolves a bona fide dispute and was reached after vigorous

16

arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Butler*, 2011 WL 4729789 at *9 n.9.

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant their Joint Motion for Final Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

Dated: March 30, 2017                     Respectfully Submitted,

                                          */s/ James B. Zouras*
                                          James B. Zouras
                                          Ryan F. Stephan
                                          Teresa M. Becvar
                                          Haley R. Jenkins
                                          **STEPHAN ZOURAS, LLP**
                                          205 North Michigan Avenue
                                          Suite 2560
                                          Chicago, IL 60601
                                          312.233.1550
                                          312.233.1560 (fax)
                                          jzouras@stephanzouras.com

                                          **ATTORNEYS FOR PLAINTIFFS**

                                          */s/ Jane M. McFetridge*
                                          Jane M. McFetridge
                                          Jeffrey L. Rudd
                                          Jody Kahn Mason
                                          JACKSON LEWIS P.C.
                                          150 North Michigan Avenue
                                          Suite 2500
                                          Chicago, Illinois 60601
                                          (312) 787-4949
                                          (312) 787-4995 (fax)

                                          **ATTORNEYS FOR DEFENDANTS**

17

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on March 30th, 2017, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ James B. Zouras*